UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LARRY WELENC, | : |  |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | Civil Action No. 17-0766 (RBW) |
|  | : |  |
| DEPARTMENT OF JUSTICE, *et al.*, | : |  |
|  | : |  |
| Defendants. | : |  |

## MEMORANDUM OPINION

The plaintiff brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552 (2018), against the United States Department of Justice ("DOJ") to obtain records purportedly maintained by the Federal Bureau of Investigation ("FBI"). This matter is before the Court on the Defendants' Motion for Summary Judgment. For the reasons discussed below, the Court grants the motion.

I. BACKGROUND

On November 5, 2013, the plaintiff submitted a FOIA request to FBI's Las Vegas Field Office. Response to Motion for Summary Judgment (ECF No. 81, "Pl.'s Opp'n"), Exhibit ("Ex.") A. He sought "all documents in [his] file concerning Nancy Shuster and Special Agent Brescia," as well as "the second page of [a] letter to Special Agent Brecia." Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment (ECF No. 43-2, "Defs.' Mem."), Declaration of David M. Hardy (ECF No. 43-3, "Hardy Decl."), Ex. A at 1-2. The FBI assigned the matter FOIPA No. 1236172. Pl.'s Opp'n, Ex. A. On November 13, 2013, the FBI denied the "request for documents from Agent Brescia and Nancy Shuster in regards to

1

missing pages of a letter" because its "Central Records System is not arranged in a manner that allows for the retrieval of . . . specific documents/letters." Hardy Decl., Ex. A at 5.

The plaintiff chose not to "contest" the FBI's response to FOIPA No. 1236172, and by a fax submitted to the FBI's Record/Information Dissemination Section on November 22, 2013, the plaintiff submitted a new request for:

> all documents originating from the FBI Field Office Las Vegas on myself with specific reference to Special Agent Richard J[.] Brescia, Nancy L[.] Schuster, Legal Unit, and Special Agent Nina Lynn Bill (Roseberry)

*Id.*, Ex. A at 1; *see* Pl.'s Opp'n, Ex. A. By letter dated November 26, 2013, the FBI notified the plaintiff that, "[i]n response to [his] November 22, 2013 letter, [the] FBI opened a new FOIPA request and assigned it FOIPA Request No. 1239835-000." Hardy Decl. ¶ 6 n.1; *see id.*, Ex. B.

The plaintiff alleges in his complaint, however, that he submitted a FOIA request to the FBI's Headquarters on March 26, 2013 "requesting all files with the FBI Las Vegas on Nancy Shuster (Schuster), the head of the Legal Unit of the FBI Las Vegas[,] Nevada from 1996 to 1998[.]" Petition for Judicial Review of Denial of FOIA Appeal 2015-00121 (ECF No. 1, "Compl.") at 3. According to the plaintiff, this March 26, 2013 submission was the matter assigned FOIPA Request No. 1239835-000. *Id.*; *see id.*, Ex. C. Nevertheless, the parties have not disputed that the single FOIA request at issue in this case is the one designated FOIPA Request No. 1239835-000. *See* Hardy Decl., Ex. B; Compl., Ex. C.

FBI staff conducted a search of the Central Records System, *see* Hardy Decl. ¶¶ 24-25, using variations of the plaintiff's name as search terms, *see id.* ¶ 24. The search yielded 279 pages of responsive records, *id.* ¶ 11, found in a main file, 197-LV-29808, "stemming from a 1998 civil complaint filed by [the plaintiff] against the FBI in response to its handing of [an

earlier FOIA] request," *id*. ¶ 27, in the United States District Court for the District of Nevada, *see Welenc v. U.S. Dep't of Justice*, No. 98-cv-0059 (D. Nev. filed Jan. 13, 1998).

On September 16, 2014, the FBI released 186 pages of records in full, released 42 pages in part, and withheld 11 pages in full, after having redacted certain information under FOIA Exemptions 5 and 6. *See* Hardy Decl. ¶¶ 11, 28; Compl. at 3; *see id*., Ex. C. The remaining 40 pages of records were withheld in full because they were duplicates. Hardy Decl. ¶ 28. The FBI further informed the plaintiff that it had consulted with unidentified government agencies with respect to some of the responsive records. *Id*., Ex. F at 1.

The plaintiff appealed the FBI's response to DOJ's Office of Information Policy ("OIP"), which assigned the matter a tracking number, AP-2015-00121. *Id*. ¶ 12; *see id*., Ex. G. On May 12, 2015, the OIP affirmed the FBI's initial determination. *Id*. ¶ 13; *see* Compl., Ex. A. In addition, the OIP advised the plaintiff that the FBI had referred records to other government agencies, specifically the DOJ's Civil Division and Executive Office for United States Attorneys ("EOUSA"), for processing and direct response to the plaintiff. Compl., Ex. A at 2. The OIP deemed the referrals proper, instructed the plaintiff to consult these agencies directly for further information, and advised the plaintiff of his right to appeal any future determination made by these agencies. *Id*., Ex. A at 2.

After the plaintiff filed this civil action in April 2017, FBI staff reviewed the agency's initial response to the plaintiff's request and "issued an updated release" on September 26, 2018. Hardy Decl. ¶ 15. Of the 279 pages it initially located, the FBI "released 228 pages with minimal information withheld pursuant to FOIA Exemptions [5 and 6]." *Id*.; *see generally id*., Ex. I ("Vaughn Index").

II. DISCUSSION

   A. Summary Judgment Standard

The Court may grant summary judgment to a government agency as the moving party if the agency shows that there is no genuine dispute as to any material fact and if it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

The Court may base its ruling on information in an agency's supporting declaration if the declaration is "relatively detailed and nonconclusory[.]" *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal quotation marks and footnote omitted). Further, the supporting declaration must "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and [is] not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (footnote omitted).

   B. The FBI's Search for Responsive Records

An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and internal quotation marks omitted). The agency may submit affidavits or declarations to explain the method and scope of its search, *see Perry v. Block*, 684 F.2d 124, 126 (D.C. Cir. 1982), and

such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation and internal quotation marks omitted). Here, the declarant asserts that the FBI's search of the Central Records System ("CRS") using variations of the plaintiff's name as search terms was a reasonable search. *See* Hardy Decl. ¶¶ 23-26.

The CRS contains "applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling its integrated missions and functions as a law enforcement, counterterrorism, and intelligence agency[.]" *Id*. ¶ 16. Its files "are organized according to designated subject categories," such as investigations the FBI conducts. *Id*. ¶ 17. "[G]eneral indices to the CRS are the index or 'key' to locating records within . . . [the] CRS." *Id*. ¶ 18. These indices are arranged in alphabetical order and fall within two categories: (1) a "main" entry carrying the name of the individual who or organization or other subject matter which is the designated subject of the file, or (2) a "reference" or cross-reference entry mentioning an individual who is within a main file indexed to a different individual or subject matter. *Id*. ¶ 18. "FBI employees may index information in the CRS by individual (persons), by organization (organizational entities, places, and things), and by event (*e.g.*, terrorist attack or bank robbery)." *Id*. ¶ 19. And "[i]ndividual names may be recorded with applicable identifying information such as date of birth, race, sex, locality, Social Security Number, address, and/or date of an event." *Id*. ¶ 21. While the FBI's systems have been upgraded over the years, *see id*. ¶¶ 20-22, the index search methodology still applies, *see id*. ¶ 23.

For two reasons, the FBI's declarant explains, the CRS is the "only system of records where information pertaining to [the plaintiff's] request would likely be found." *Id*. ¶ 26. First, the CRS "is where the FBI indexes information about individuals . . . for future retrieval." *Id*. "Second, given [the plaintiff's] request for information on himself with reference to specific individuals, such information would reasonably be expected to be located in the CRS." *Id*.

Accordingly, FBI staff "conducted a CRS index search for responsive main file records on subject, Larry Michael Welenc, . . . using three-way and two-way phonetic breakdowns of [three] variations of [the plaintiff's] name[.]" *Id*. ¶ 24. In addition, staff used information provided by the plaintiff in his FOIA request, "such as specific references to certain individuals, to identify responsive records." *Id*. This search yielded one main file, 197-LV-29808. *Id*. ¶¶ 24-25.

The premise of plaintiff's challenge to the adequacy of the FBI's search is that its summary judgment motion pertains to the incorrect FOIA request. *See* Pl.'s Opp'n at 3-5. Although an earlier FOIA request by the plaintiff did seek records about Nancy Shuster, Richard Brescia and Nina Lynn Roseberry, *id*. at 2, the plaintiff insists that FOIPA Request No. 1239835, "[t]he FOIA Request which is the subject matter of this complaint[,] is a request[for] all documents **on the [p]laintiff** in reference to Nancy Shuster of the FBI Las Vegas Legal Unit, NOT all documents on Nancy Shuster." *Id*. (emphasis in original). But the parties agree that FOIPA No. 1239835 is the sole request at issue in this case, *see* Compl. at 3; Hardy Decl. ¶ 7, and this is the request to which the FBI responded, *see* Hardy Decl. ¶ 11; *see id*., Exhs. F, I.[1]

---

[1] If there is any confusion as to the applicable FOIA request, the plaintiff is at fault. His complaint mentions four FOIA requests by number and the plaintiff attaches an excerpt of David M. Hardy's April 30, 2009 declaration in support of the defendants' motion to dismiss a prior civil action filed by the plaintiff in this district, *Welenc v. Dep't of Justice*, No. 1:08-cv-2249 (D.D.C. filed Dec. 31, 2008). Neither the prior civil action nor these four FOIA requests are relevant here.

The request sought information about the plaintiff himself, and the plaintiff admits that "[t]he overwhelming majority" of the documents the FBI released "were in fact concerning" him. Compl. at 3.

With the understanding that FOIPA Request No. 1239835 is the applicable request, it is apparent that the FBI's search was reasonably calculated to locate records responsive to that request. *See generally* Hardy Decl. ¶¶ 16-22. The FBI's declarant describes in detail the FBI's records system, its content and organization, and the method for retrieving information from it. *See generally id*. Based on the request submitted to the FBI, it was reasonable for FBI staff to look for responsive records in the CRS and to use variations of the plaintiff's name as proper search terms. The main file the FBI located is responsive to FOIPA Request No. 1239835, as it pertains to the plaintiff and, specifically, the lawsuit the plaintiff brought against the DOJ. The Court therefore concludes that FBI conducted a reasonable search for records responsive to FOIPA Request No. 1239835.

### C. Information Withheld Under FOIA Exemptions 5 and 6

#### 1. FOIA Exemption 5

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). It "incorporates the privileges that the [g]overnment may claim when litigating against a private party, including the governmental attorney-client and attorney work product privileges, . . . and the deliberative process privilege." *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015); *see NLRB v. Sears, Roebuck, & Co.*, 421 U.S. 132, 148-49 (1975). "[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not available in

discovery, it may be withheld from FOIA requesters." *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996) (internal quotation marks omitted).

Protection under Exemption 5 is warranted if the document at issue meets two criteria: "its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). It is apparent that the responsive records discovered in this case meet the first criteria. All of the responsive records at issue were located in "civil litigation file no. 197-LV-29808," Hardy Decl. ¶ 35, "stemming from a 1998 civil complaint filed by [the plaintiff] against the FBI in response to its handling of his FOIPA request," *id.* ¶ 27. With respect to the second criteria, the defendants cite the attorney-client, attorney work product and deliberative process privileges as grounds for withholding certain documents or portions of documents found in main file 197-LV-29808.

a. Attorney-Client Privilege

"[W]hen the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests, and needs the same assurance of confidentiality so it will not be deterred from full and frank communications with its counselors, [Exemption 5] applies." *In re Lindsey*, 158 F.3d 1263, 1269 (D.C. Cir. 1998) (citation and internal quotation marks omitted). A government agency "can be a 'client' and agency lawyers can function as 'attorneys' within the relationship contemplated by the privilege." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980). Exemption 5 may apply if the agency demonstrates that the information at issue "(1) involves 'confidential communications between an attorney and his client' and (2) relates to 'a legal matter for which the client has sought professional advice.'" *Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 267

(D.D.C. 2004) (quoting *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977)).

The FBI's declarant explains that information in "correspondence between the U.S. Attorney's Office and the FBI's Las Vegas Field Office" was redacted because it "contains confidential information between the FBI's Special Agent in Charge ('SAC') and the Chief Division Counsel ('CDC') of the Las Vegas Field Office, and the U.S. Attorney's Office." Hardy Decl. ¶ 35. In some circumstances, the declarant states, the U.S. Attorney's Office is counsel and the FBI is the client; in others, the CDC is counsel and the SAC is the client. *Id.* In both circumstances, the declarant states, release of this information "would reveal confidential communications, pertinent facts, legal analysis, and comments used to formulate the FBI's legal position." *Id.* The FBI relies on the attorney-client privilege alone, *see, e.g.,* Vaughn Index (Bates Nos. 24-25), or in conjunction with the attorney work product privilege, *see, e.g.,* Vaughn Index (Bates Nos. 50-51, 119-20).

### b. Attorney Work Product Privilege

"The work-product doctrine shields materials 'prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative.'" *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005) (quoting Fed. R. Civ. P. 26(b)(3)). Federal Rule of Civil Procedure 26 protects work product if the materials contain the "mental impressions, conclusions, opinions or legal theories of a party's attorney" and were "prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3)(B); *see, e.g., Miller v. U.S. Dep't of Justice*, 562 F. Supp. 2d 82, 115 (D.D.C. 2008) (concluding that documents which "reflect such matters as trial preparation, trial strategy, interpretation, personal evaluations and opinions pertinent to [a plaintiff's] criminal case" qualify as attorney work product under FOIA Exemption 5). In order

for Exemption 5 to protect information under the privilege, "an attorney must have prepared or obtained the document because of the threat of litigation, *i.e.*, the lawyer must at least have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable." *Bloche v. Dep't of Defense*, 279 F. Supp. 3d 68, 81 (D.D.C. 2017) (citations and internal quotation marks omitted).

The FBI relies on the attorney work product privilege to shield documents or portions of documents which "discuss federal rules of civil procedure, personal impressions, comments, and legal advice" pertaining to the civil lawsuit the plaintiff "lodged against the U.S. Department of Justice." Hardy Decl. ¶ 36. According to the declarant, these documents "memorialize conversations between the U.S. Attorney's Office, the Las Vegas Field Office's SAC and CDC." *Id*. In addition, the Civil Division withholds in full a two-page "memorandum from the Director of the Federal Programs Branch of the Civil Division to the FBI Director requesting a litigation report," *id*.; *see* Vaughn Index (Bates Nos. 114-15), because it "contains information regarding DOJ policy and strategy pertaining to the delegation of [the plaintiff's civil lawsuit] to the U.S. Attorney for direct handing," Hardy Decl. ¶ 36. The declarant represents that the Civil Division is shielding "materials prepared by an attorney or others in anticipation of litigation," *id*., as their release "would disclose the attorney's theory of the case or trial strategy," *id*. While the Civil Division relies on the attorney work product privilege alone, *see* Vaughn Index (Bates Nos. 114-15), the FBI at times relies on the attorney work product privilege in conjunction with the deliberative process privilege, *see* Vaughn Index (Bates Nos. 73-81), "to withhold privileged attorney work product performed in connection with [the plaintiff's] civil litigation," Hardy Decl. ¶ 36.

c. Deliberative Process Privilege

"The deliberative process privilege protects from disclosure 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Cleveland v. United States*, 128 F. Supp. 3d 284, 298 (D.D.C. 2015) (quoting *Dep't of Interior v. Klamath*, 532 U.S. 1, 8 (2001)). For the privilege to apply, the agency must demonstrate that the information it withholds is both "predecisional" and "deliberative." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 39 (D.C. Cir. 2002). A "predecisional" document is one "'prepared in order to assist an agency decision-maker in arriving at his decision,' rather than to support a decision already made." *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975)). For example, "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency" *Coastal States Gas v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980), are predecisional. The issue for the Court is whether "disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Formaldehyde Inst. v. Dep't of Health & Human Servs.*, 889 F.2d 1118, 1122 (D.C. Cir. 1989) (quoting *Dudman Commc'ns Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987) (alteration in original)).

The FBI represents that it invokes the deliberative process privilege to prevent disclosure of "information that discusses legal opinions and proposed actions," because the relevant documents "outline and discuss intermediary options which led to final agency decisions" with respect to the plaintiff's lawsuit. Hardy Decl. ¶ 37. The declarant states that the information is

both predecisional and deliberative, *id*., and is withheld in conjunction with the attorney work product privilege, *see* Vaughn Index (Bates Nos. 73-81).

### d. The Plaintiff's Opposition

Although the plaintiff objects to the withholding of information under Exemption 5, he fails to submit or point to any materials in the record to rebut the FBI's reasons for the withholdings. The plaintiff's first objection again presumes that the FBI responded to the incorrect FOIA request. He contends that only "[b]y maintaining that the original FOIA Appeal concerned only Documents on FBI Agent Nancy Shuster of the Legal Unit," could the FBI withhold information under Exemption 5. Pl.'s Opp'n at 3. And he suggests that Nancy Shuster's affiliation with the Legal Unit is the only reason the FBI could invoke discovery-related privileges to deprive him of the information he wants. However, the FBI shows that it responded to the same FOIPA request for information about the plaintiff faxed to the FBI's Record/Information Dissemination Section on November 22, 2013.

Second, the plaintiff speculates about the content of the records or portions of records withheld under Exemption 5. He claims that the FBI refuses to release information which exonerates him from misconduct or criminal conduct of which he had been accused. For example, the plaintiff claims that the withheld information would show that he did not commit the crime of trespass in 1998 at the RIO Hotel Casino in Las Vegas, *see* Pl.'s Opp'n at 6, or show that he was not investigated for committing extortion in 2004 or 2005, *see id*. He further speculates that information withheld from these records provided to him pertain to FOIA requests he made to the United States Department of State, *see id*. at 8, and an alleged investigation stemming from his 1993 application for a position as a translator and German language interpreter, *see id*. at 8-10. And the plaintiff asserts that the withheld information

12

pertains to his 1996 visit to the FBI's Las Vegas Field Office, his encounter with Special Agent Richard Brescia and other FBI Agents sometime in 1997 or 1998, his detention in 1998, *see id*. at 11- 17, and the FBI's alleged interference with his attempt to obtain a gaming license in New Jersey in 1999, *see id*. at 23-28. He offers no support for these assertions, however, and his purely speculative assertions as to the contents of the responsive records and information not provided to him does nothing to rebut the FBI's representations for the withholdings.

Even if information in the withheld records exonerates the plaintiff as he speculates it would, the FBI need not disclose it if a FOIA exemption applies. A FOIA action is not a criminal case, and a FOIA requester has no constitutionally protected right to exculpatory evidence as would a criminal defendant. *See Boyd v. Criminal Div. of the U.S. Dep't of Justice*, 475 F.3d 381, 390 (D.C. Cir. 2007) (affirming the withholding of records under FOIA Exemption 7(D), notwithstanding the requester's belief that disclosure was warranted under *Brady v. Maryland*, 373 U.S. 83 (1963)); *Richardson v. U.S. Dep't of Justice*, 730 F. Supp. 2d 225, 234 (D.D.C. 2010) (rejecting requester's asserted right to information under FOIA because it "would have been available to him during the criminal proceedings either as *Brady* or as Jencks Act, 18 U.S.C. § 3500 [(2018)], material").

Because the FBI has adequately demonstrated that the information it did not disclose is protected under the attorney-client, attorney work product, or deliberative process privileges, or some combination of these privileges, the Court concludes that it properly has been withheld under Exemption 5.

2. FOIA Exemption 6

Under FOIA Exemption 6, "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" are not subject to

disclosure. 5 U.S.C. § 552(b)(6). The Court must undertake a two-part inquiry to determine whether Exemption 6 applies. First, the Court must determine whether the relevant records "are personnel, medical, or 'similar' files covered by Exemption 6." *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008). However, the records need not belong to "a narrow class of files containing only a discrete kind of personal information." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982). Rather, Exemption 6 "cover[s] detailed Government records on an individual which can be identified as applying to that individual." *Id.* (citations omitted). Second, the Court "must . . . determine whether their disclosure 'would constitute a clearly unwarranted invasion of personal privacy.'" *Multi Ag Media*, 515 F.3d at 1228 (quoting 5 U.S.C. § 552(b)(6)). As to this inquiry, the Court must "balance the privacy interest that would be compromised by disclosure against any public interest in the requested information." *Id.* (citations omitted). "A substantial privacy interest is anything greater than a *de minimis* privacy interest." *Id.* at 1229-30 (citation omitted). And the only relevant public interest in this analysis is "the extent to which disclosure of the information sought would 'she[d] light on the agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

The FBI has withheld from production to the plaintiff the names of and identifying information about FBI Special Agents and support personnel, Hardy Decl. ¶ 40, non-federal government employees, *id*. ¶ 42, private security personnel, *id*., and third party private citizens, *id*. ¶ 44, under Exemption 6. It represents that the Special Agents and FBI support personnel, who do not choose the investigation or civil litigation assigned to them, may become targets of

14

"unnecessary, unofficial questioning as to the conduct of this civil litigation, or other investigations," if their identities are disclosed, even if these individuals are no longer FBI employees. *Id*. ¶ 40. Further, the FBI's declarant states that "an individual targeted by law enforcement actions, or involved in litigation with the FBI," may "carry a grudge," prompting him to "seek revenge on FBI [Special Agents] and support personnel as well as other federal employees who were involved in a particular litigation or investigation." *Id*. According to the FBI, these individuals have "substantial privacy interests," which are not outweighed by any public interest in disclosure of their names and identifying information about them. *Id*. ¶ 41. The FBI adopts a similar rationale for withholding information about other government employees and private security personnel, as release of their identities "would result in unsolicited and unnecessary attention," *id*. ¶ 42, and "could subject them to harassment . . . as the result of their association with an FBI file," *id*. Likewise, the third parties whose names appear in the responsive records "are not of investigative interest to the FBI," *id*. ¶ 44, and release of their identities "could subject them to possible harassment, criticism, or negative inferences due to their association with FBI records," *id*. The EOUSA also relies on Exemption 6 to protect an employee whose "individual privacy interest . . . outweigh[s] the public interest in disclosure" of his or her identity. *Id*. ¶ 41.

Courts have concluded that, "[g]enerally, government employees and officials . . . have a privacy interest in protecting their identities because disclosure 'could subject them to embarrassment and harassment in the conduct of their official duties and personal affairs.'" *Moore v. Bush*, 601 F. Supp. 2d 6, 14 (D.D.C. 2009) (quoting *Halpern v. FBI*, 181 F.3d 279, 296-97 (2d Cir. 1999)). Here, the defendants adequately demonstrate that the individuals whose identities are protected have cognizable privacy interests. The plaintiff is therefore obligated "to

15

articulate a significant public interest sufficient to outweigh an individual's privacy interest," *Marck v. Dep't of Health & Human Servs.*, 314 F. Supp. 3d 314, 325 (D.D.C. 2018) (citing *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)), *aff'd sub nom. Marck v. U.S. Dep't of Justice*, No. 18-5204, 2018 WL 6167381 (D.C. Cir. Nov. 15, 2018), yet this plaintiff's response to the summary judgment motion nowhere addresses FOIA Exemption 6.

Because Exemption 6 "covers not just files, but bits of personal information, such as names and addresses," *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015), where their release poses "a palpable threat to privacy," *id*. (quoting *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 152 (D.C. Cir. 2006)) (citation and internal quotation marks omitted), the Court concludes that the names of and identifying information about the individuals in the responsive documents have been properly withheld under Exemption 6.

D. Segregability

"[N]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (quoting *Mead Data Cent.*, 566 F.2d at 260); 5 U.S.C. § 552(b). An agency must provide "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." *Valfells v. CIA*, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (citation omitted).

The plaintiff complains that certain documents were so heavily redacted that only a page number remained. *See* Pl.'s Opp'n at 7; *see* Compl. at 3. However, he does not argue or point to evidence in the record to rebut the "presumption that [the FBI] complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) (citation omitted). And based on the Court's review of the defendants'

supporting declaration and Vaughn Index, the Court concludes that FBI has released all reasonably segregable material.

III. CONCLUSION

The FBI has established that its search for records responsive to FOIPA Request No. 1239835 was reasonable, that it properly withheld information under FOIA Exemptions 5 and 6, and that it released all reasonably segregable information.  Therefore, the defendants' motion for summary judgment will be granted.  An Order is issued separately.

/s/
REGGIE B. WALTON
DATE: July 8, 2019                United States District Judge